1

2

3

4

5

6

7

8                                     UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LA-KEBBIA WILSON and CHARLES              No.  1:19-cv-01658-DAD-BAM
      SMITH,
12
                      Plaintiffs,
13                                              ORDER GRANTING IN PART AND
              v.                                DENYING IN PART DEFENDANTS'
14                                              MOTIONS TO DISMISS
      CITY OF FRESNO, et al.,
15                                              (Doc. Nos. 6, 8)
                      Defendants.
16

17            This matter is before the court on defendants' three separate motions to dismiss the

18    complaint filed by plaintiffs La-Kebbia Wilson and Charles Smith.  (Doc. Nos. 6, 6-1 ,8.)  A

19    hearing on the motions was held on January 22, 2020.  (Doc. No. 21.)  Attorney Gary Goyette and

20    Rachel Simons appeared telephonically on behalf of plaintiffs.  Attorney Joseph Rubin appeared

21    on behalf of defendant City of Fresno ("the City") and defendants Jeffrey Cardell, Jennifer Clark,

22    Kelli Furtado, Timothy Burns, Kevin Watkins, Andreia Cuevas, and Del Estabrooke (collectively,

23    the "Individual Defendants").  Attorney Bruce Berger appeared on behalf of defendant Howard

24    Lacy ("defendant Lacy").  The court has considered the parties' briefs and arguments, and for the

25    reasons set forth below, will grant defendants' motions to dismiss in part.

26                                            **BACKGROUND**

27            On October 22, 2019, plaintiffs filed a complaint in Fresno County Superior Court against

28    the City, the Individual Defendants, and defendant Lacy, asserting sixteen causes of action,

                                                    1

1    including: (i) discrimination, harassment, and retaliation claims under California's Fair

2    Employment Housing Act ("FEHA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.

3    §§ 2000e, *et seq*., and 42 U.S.C. § 1981; (ii) 42 U.S.C. § 1983 claims for violation of the Equal

4    Protection Clause of the United States Constitution; (iii) California Labor Code § 1102.5 claims;

5    and (iv) claims for slander, negligence, negligent infliction of emotional distress, and intentional

6    infliction of emotional distress. (Doc. No. 1, Ex. A ("Compl.").)

7        In their complaint, plaintiffs allege the following.[1]  Plaintiffs, defendant Lacy, and the

8    Individual Defendants were at all relevant times employees of the City. (Compl. at ¶¶ 1–11.)

9    Plaintiff Wilson began working for the City in the code enforcement division in the Development

10   and Resource Management department ("DARM") in 2004. (Compl. at ¶ 34.)  Various alleged

11   incidents occurred between 2004 and 2009, including defendant Lacy being overheard discussing

12   racial stereotypes, talking about hanging African-Americans at City Hall, and advising code

13   inspectors to complete inspections of a neighborhood with a high population of African-

14   Americans early in the morning so they would be at less risk. (*Id*. at ¶ 35.)  In 2009, plaintiff

15   Wilson sued the City and other individuals, alleging discrimination, harassment, and retaliation

16   based on race and gender, and those parties settled that lawsuit in 2012. (*Id*. at ¶¶ 36–37.)  In

17   June 2013, plaintiff Wilson received a parking ticket for parking her city vehicle on city property,

18   and defendant Estabrooke reported that defendant Lacy told him to issue the ticket, which he

19   eventually voided. (*Id*. at ¶ 38.)  Despite her seniority, plaintiff Wilson was laid off from her

20   position as a Community Revitalization Specialist ("CRS") in August 2013 due to purported

21   budgetary concerns, but the City kept non-African-Americans with less seniority employed, and

22   plaintiff Wilson was at the top of the reinstatement list, which did not include any other African-

23   Americans. (*Id*. at ¶ 43.)  During her more than three years being laid off, plaintiff Wilson

24   applied for and interviewed for several positions with the City, which hired less qualified, non-

25   African-American applicants. (*Id.* at ¶¶ 45–69.)  She was only reinstated in December 2016 after

26   _____

27   [1]  The court will not provide a comprehensive or exhaustive summary of plaintiffs' complaint,
     which includes 250 lengthy paragraphs spanning 107 pages.  Rather, the court summarizes
     plaintiffs' allegations here and in the analysis section below, focusing on allegations that are
28   relevant to the court's analysis.

threatening litigation.  (*Id.* at ¶ 67.)  Plaintiff Wilson felt scrutinized and micromanaged on her first day back.  (*Id.* at ¶¶ 70–72.)  In early 2017, she was unsatisfied with an ergonomic assessment of her workspace and the keyboard she was provided; tall partitions were not installed on her cubicle until she insisted; defendant Lacy dismissed her concerns about her work truck, which was caked with mud and had a metal rod protruding out of the upholstery; she insisted her truck be detailed and defendant Lacy delayed those repairs; she was not provided a tool bag and did not want to speak to defendant Lacy to request one so she worked without a bag for a few months and then defendant Estabrooke gave her a tool bag; and she applied for several other positions with the City in 2017 and 2018 and was not selected for them.  (*Id.* at ¶¶ 75–102.) Plaintiff Wilson also alleges that defendant Lacy zip-tied her earbud headphones together and broke her glasses.  (*Id.* at ¶¶ 109, 126.)

　　　　Plaintiff Smith was hired as a temporary employee with the City in October 2016, under defendant Lacy' direct supervision.  (*Id.* ¶ 15.)  In December 2016, plaintiff Smith saw defendant Lacy make negative eye contact with plaintiff Wilson while walking down a hallway, and when plaintiff Smith asked him about that interaction, he responded "stay away from her because she's a no good piece of shit," "she's lazy," and that Wilson only got her job back after the lay off because she "played the race card."  (*Id.* at ¶ 16.)  Defendant Lacy told plaintiff Smith that he should avoid plaintiff Wilson "like the plague" if he wanted "any chance of being hired full-time."  (*Id.*)  Plaintiff Smith was hired for a full-time position in code enforcement in April 2018, and he attended a code enforcement training in May 2018, which plaintiff Wilson also attended. (*Id.* at ¶¶ 17–18.)  Defendant Lacy accused plaintiff Smith of having a private meeting with plaintiff Wilson and exchanging nods with her during the training, and he told plaintiff Smith that he "had eyes and ears everywhere" and that if plaintiff Smith "stuck with him" then Smith would pass probation and continue his employment with the City.  (*Id.* at ¶ 18.)

　　　　On June 28, 2018, plaintiff Smith attended an inspection of an African-American woman's property with defendant Lacy who told him "see Charlie, I'm not a racist.  Kiki [referring to plaintiff Wilson] wants to say that I'm a racist, but I'm not.  I'm super nice.  It's her. Kiki is an entitled nigga.  I'm not saying nigger.  I'm saying nigga—N-I-G-G-A."  (*Id.* at ¶ 20.)

1   Plaintiff Smith told defendant Lacy to "just stop it already.  I don't want to hear this crap.  I get it,

2   you hate Kiki, but I'm not here for your issue with Kiki," and defendant Lacy did not respond.

3   (*Id*.)  In early July 2018, defendant Lacy brushed off plaintiff Smith's concerns that plaintiff

4   Smith's name was being used for inspections that he did not perform.  (*Id*. at ¶ 22.)  Defendant

5   Lacy also purposefully withheld plaintiff Smith's evaluation so that he could not pass probation

6   and transferred him to the tire team.  (*Id.* at ¶¶ 23–24.)  On July 10, 2018, plaintiff Smith felt he

7   had no choice and sent his resignation letter to his manager, defendant Burns.  (*Id.* at ¶ 25.)  After

8   his requests for an in-person, same-day meeting with defendant Burns went unanswered, plaintiff

9   Smith resigned effective immediately instead of waiting two weeks.  (*Id*.)  As plaintiff Smith was

10  leaving, he told plaintiff Wilson to call him.  (*Id.* at ¶ 27.)  They spoke the next day while plaintiff

11  Wilson was at work and plaintiff Smith told her about defendant Lacy's comments.  (*Id.*)

12      Plaintiff Wilson was upset and crying and told a co-worker who tried to comfort her that

13  "they're all fuckin' liars – all of them."  (*Id.* at ¶ 111.)  Another employee, Phil Skei, complained

14  to HR because he thought plaintiff Wilson's comment was directed at him, and the City

15  investigated and took his complaint more seriously than her complaint about defendant Lacy's

16  racial animus against her.  (*Id.* at ¶¶ 111, 113, 118, 122.)  Plaintiff Wilson met with HR and her

17  union attorney a few times and was ultimately put on administrative leave and was escorted out of

18  the building.  (*Id.* at ¶¶ 127–129.)  She returned to her employment in July 22, 2019.  (*Id*. at

19  ¶ 141.)  On September 6, 2019, the City delivered to plaintiff Wilson a letter regarding the results

20  of the investigation into her complaints about defendant Lacy, concluding that there was not

21  sufficient facts and evidence to sustain her allegations.  (*Id*. at ¶ 161.)

22      On May 9, 2019, plaintiff Wilson and plaintiff Smith submitted requests for right to sue

23  letters from the California Department of Fair Employment and Housing ("DFEH"), which DFEH

24  issued on May 17, 2019 and June 11, 2019, respectively, and which were forwarded to the City

25  on June 28, 2019.  (*Id.* at ¶¶ 172–174.)  Also, on June 28, 2019, plaintiffs sent their City of Fresno

26  Claims for Damages form to the City, which acknowledged receipt on July 12, 2019.  (*Id.* at

27  ¶¶ 175–177.)  Those claims were rejected by operation of law on August 12, 2019.  (*Id.*)

28  /////

On October 22, 2019, plaintiffs filed their complaint, which was removed to this federal court on November 21, 2019 pursuant to 28 U.S.C. §§ 1331, 1441.  (Doc. No. 1.)

On November 26, 2019, the City filed its motion to dismiss plaintiffs' complaint, to strike portions of plaintiffs' complaint, and for a more definite statement, and the Individual Defendants filed their motion to dismiss plaintiffs' complaint and for a more definite statement.  (Doc. Nos. 6, 6-1, 6-2, 6-3.)[2]  On November 27, 2019, defendant Lacy filed his motion to dismiss the complaint.  (Doc. No. 8.)  On January 8, 2020, plaintiffs filed oppositions to the pending motions. (Doc. Nos. 13, 13-1, 14.)  On January 15, 2020, defendants filed their replies.  (Doc. Nos. 16, 17, 18.)

## LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

---

[2]  The court will deny the City's motion to strike brought pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because the City has not identified with specificity which paragraphs or portions of plaintiffs' complaint they contend should be stricken.  Under Rule 12(f), a court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  While the court agrees that plaintiffs' complaint is excessively and unnecessarily long and contains extensive detail of events that occurred long ago and that have tenuous relevance, if any, to the claims asserted, the court is not going to wade through the depths of the complaint to identify which paragraphs or portions of paragraphs—where some paragraphs span several pages in length—should be stricken.  Nevertheless, plaintiffs should not include immaterial and impertinent allegations in any amended complaint that they may elect to file. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds by* 510 U.S. 517 (2004). Similarly, the court will deny the City's and the Individual Defendants' motions for a more definite statement under Rule 12(e) because they have not "point[ed] out the defects complained of and the details desired," as required.  *See* Fed. R. Civ. P. 12(e).

1  does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

2  a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3  (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the

4  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

6  In determining whether a complaint states a claim on which relief may be granted, the

7  court accepts as true the allegations in the complaint and construes the allegations in the light

8  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

9  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff

10  "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

11  that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

12  *Carpenters*, 459 U.S. 519, 526 (1983).

13  <center>**ANALYSIS**</center>

14  The City moves to dismiss plaintiffs' second cause of action for harassment under FEHA,

15  the eighth cause of action for violation of 42 U.S.C. § 1983, the ninth cause of action for

16  discrimination under 42 U.S.C. § 1981, the tenth cause of action for harassment under 42 U.S.C.

17  § 1981, the eleventh cause of action for retaliation under 42 U.S.C. § 1981, the fourteenth cause

18  of action for negligence, the fifteenth cause of action for negligent infliction of emotional distress,

19  and the sixteenth cause of action for intentional infliction of emotional distress. (Doc. No. 6.)

20  The Individual Defendants move to dismiss those same eight claims, as well as the twelfth

21  cause of action for retaliation in violation of California Labor Code § 1102.5. (Doc. No. 6-1.)

22  Defendant Lacy moves to dismiss the same claims as the Individual Defendants, and he

23  also moves to dismiss the thirteenth cause of action for slander. (Doc. No. 8.)

24  The court will address each of these claims in turn below.[3]

25  /////

26

27  _____

[3] Plaintiffs have conceded that their fourteenth cause of action against all defendants for
28  negligence should be dismissed. Accordingly, the court will dismiss that claim with prejudice.
(Doc. Nos. 13 at 13; 14 at 23; 13-1 at 12.)

<center>6</center>

**A.      FEHA Claim for Harassment (Second Cause of Action)**

Plaintiff Wilson has alleged a FEHA claim for harassment against all defendants, and Plaintiff Smith has alleged a FEHA claim for harassment against the City and defendant Lacy. (Compl. at ¶ 91.)  The Individual Defendants move to dismiss plaintiff Wilson's FEHA claim on the basis that she did not exhaust her administrative remedies and has not sufficiently alleged that any acts of harassment occurred during the relevant time period.  (Doc. No. 6-3 at 20–25.) Defendant Lacy also moves to dismiss plaintiffs' FEHA claim on the same basis.  (Doc. No. 8-1 at 2–4.)[4]

Before filing a civil action in court alleging FEHA violations, an employee must first exhaust administrative remedies.  *See Blum v. Superior Court*, 141 Cal. App. 4th 418, 422 (2006). An employee exhausts administrative remedies by filing a complaint with DFEH within one year of the occurrence of the allegedly unlawful act and obtaining a notice of the right to sue from DFEH.  *Id.*; *see also Rao v. Amerisource Bergen Corp.*, No. 2:08-cv-01527-DAD, 2010 WL 3767997, at *9 (E.D. Cal. Sept. 22, 2010) ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA.").  It is the plaintiff's burden to plead and prove timely exhaustion of administrative remedies.  *See Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (citing *Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)).

"[T]he scope of the DFEH complaint defines the scope of the subsequent civil action." *Keever v. Mediation Ctr. of San Joaquin*, No. 2:13-cv-00029-KJM-KJN, 2015 WL 75194, at *6 (E.D. Cal. Jan. 6, 2015).  Thus, "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001); *see also Soldinger v. Nw. Airlines, Inc.*, 51 Cal. App. 4th 345, 381 (1996).  However, a plaintiff may bring a civil action based on conduct not specifically included in a DFEH complaint if it is "like or reasonably related" to the allegations in the DFEH

---

[4]  The City does not move to dismiss plaintiff Wilson's FEHA harassment claim.  The City initially moved to dismiss plaintiff Smith's FEHA harassment claim on the basis that he had not sufficiently alleged harassment.  (Doc. No. 6-2 at 20.)  But in its reply brief, the City withdrew its motion to dismiss plaintiff Smith's FEHA harassment claim.  (Doc. No. 18 at 5.)

1  complaint or "can reasonably be expected to grow out of an administrative investigation."

2  *Leland v. City and Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. Sept. 2, 2008);

3  *see also Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1615 (1995).

4          The FEHA does not address whether and under what circumstances a plaintiff may bring a

5  FEHA claim against a party not specifically named in a DFEH complaint.  Section 12960 of the

6  California Government Code provides that employees may "file with the department a verified

7  complaint in writing which shall state the name and address of the person, employer, labor

8  organization or employment agency alleged to have committed the unlawful practice."  California

9  appellate courts have interpreted this provision as establishing that exhaustion is not satisfied

10  unless a plaintiff's administrative charge provides defendant notice of the substance of the

11  plaintiff's claims.  *See Medix Ambulance Service, Inc.*, 97 Cal. App. 4th at 117–118; *Cole v.*

12  *Antelope Valley Union High School Dist.*, 47 Cal. App. 4th 1505, 1511 (1996); *Valdez v. City of*

13  *Los Angeles*, 231 Cal. App. 3d 1043, 1060–1061 (1991).  These appellate courts also have

14  concluded that a defendant does not receive adequate notice if it is not named in either the caption

15  or the body of the administrative complaint.  *See generally Medix Ambulance*, 97 Cal. App. 4th at

16  116 ("None of these cases held that a harassment case may proceed against one not mentioned in

17  the administrative complaint.")  Thus, a plaintiff can exhaust administrative remedies for claims

18  against defendants who are not named in the caption of the DFEH complaint if those defendants

19  are identified in the body of the charge.  *See Martin v. Fisher*, 11 Cal. App. 4th 118, 122 (1992)

20  (reasoning that parties specifically named in the body should be on notice of a plaintiff's claims

21  and be able to "anticipate they will be named as parties in any ensuing lawsuit"); *see also*

22  *Saavedra v. Orange Cty. Consol. Transp. etc. Agency*, 11 Cal. App. 4th 824, 826–828 (1992).

23          Here, plaintiff Wilson asserts that she had exhausted her administrative remedies and

24  provided notice to the Individual Defendants and defendant Lacy because

25                  [her DFEH complaint names] the 'Co-Respondents' as 'City of
                    Fresno's Supervisors & Managers' as specifically 'to be addressed
26                  in the lawsuit,' her Right-to-Sue letter lists the respondent as 'City of
                    Fresno et al.,' [and her] Government Damages claim—filed with [the
27                  City] *the very same day* Plaintiff Wilson provided her DFEH Right-
                    to-Sue letter to the City—specifically named *all* the individual
28                  Defendants in the body of that claim.

8

1   (Doc. No. 13-1 at 27.)[5]  There is no question that the Individual Defendants and defendant Lacy

2   were not identified by name in the caption or in the body of plaintiff Wilson's DFEH complaint.

3   Plaintiff Wilson filled in the blanks for "name" of a co-respondent as "[t]o be addressed in

4   lawsuit" and for "title" of a co-respondent as "City of Fresno Supervisors & Managers."  (Doc.

5   No. 6-4 at 33.)

6         The court concludes that plaintiff Wilson's identification of "City of Fresno Supervisors

7   & Managers" is too vague and overbroad to put the specific individual defendants on notice of

8   plaintiff's charges against them and of the potential that they will be named in any ensuing

9   lawsuit.  This is particularly the case here because plaintiff Wilson chose not to describe the

10  reasons for the alleged harassment or otherwise identify the alleged harassers in the body of the

11  DFEH complaint, beyond stating "[t]o be addressed in lawsuit."  (Doc. No. 6-4 at 37.)  This fact

12  distinguishes plaintiff Wilson's DFEH complaint from the DFEH complaint in *Ayala v. Frito

13  Lay, Inc.*, 263 F. Supp. 3d 891 (E.D. Cal. 2017), a case decided by this court and cited by plaintiff

14  Wilson in her opposition as support for her argument.  (*See* Doc. No. 13-1 at 27.)  In *Ayala*,

15  defendant Frito Lay was not specifically named in the DFEH complaint, but the court found Frito

16  Lay was provided with sufficient notice of the plaintiff's charges because Frito Lay was the

17  complainant's employer, the respondents that complainant listed were Frito Lay employees, the

18  complainant provided Frito Lay's facility address as the respondents' address, the complainant

19  described the respondents as Frito Lay employees, and the DFEH complaint referenced Frito Lay

20  multiple times.  *Ayala*, 263 F. Supp. 3d at 904.

21        Although plaintiff Wilson's City of Fresno Claim for Damages form describes many of

22  the alleged incidents and the individuals involved (Doc. No. 13-2 at 16–20), she has not pointed

23  the court to any authority that suggests the court should look beyond the DFEH complaint and

24  _____

25  [5]  The court grants the parties' unopposed requests for judicial notice of plaintiffs' DFEH
    complaints, DFEH right-to-sue letters, City of Fresno Damages Claims, and plaintiff Wilson's
26  EEOC charge and notice of suit rights.  (Doc. Nos. 6-4; 13-2 at 2.)  Documents that constitute
    "matters of public record" may be judicially noticed.  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
27  499 F.3d 1048, 1052 (9th Cir. 2007) (citing Fed. R. Evid. 201(b)); *see also Adetuyi v. City and
    Cty. of San Francisco*, 63 F. Supp. 3d 1073, 1080 (N.D. Cal. 2014) (taking judicial notice of
28  plaintiff's DFEH and EEOC charges and right-to-sue letters).

1    Right-to-Sue letter.  Plaintiff has simply not supported her position that the court should consider

2    her Claim for Damages form, which plaintiff submitted to the City, in evaluating whether she

3    exhausted her administrative remedies as to the Individual Defendants and defendant Lacy.

4          Moreover, the court is not persuaded that the subject line "Wilson / City of Fresno et al."

5    in the Right-to-Sue letter provided notice to the Individual Defendants and defendant Lacy.  "*Et*

6    *al*." comes from the Latin phrase meaning "and other persons," *see* ET AL., Black's Law

7    Dictionary (11th ed. 2019), but nothing about plaintiff Wilson's use of that phrase provided

8    notice to the Individual Defendants and defendant Lacy that they are those "other persons."

9          Accordingly, the court concludes that plaintiff Wilson has not exhausted her

10   administrative remedies with respect to her FEHA harassment claims against the Individual

11   Defendants and defendant Lacy and, accordingly, plaintiff Wilson's FEHA harassment claim

12   against the Individual Defendants and defendant Lacy will be dismissed.

13         Plaintiff Smith's FEHA harassment claim against defendant Lacy suffers the same fate

14   because plaintiff Smith's DFEH complaint similarly fails to name defendant Lacy as a respondent

15   or refer to defendant Lacy in the body of his complaint.  (Doc. No. 6-4 at 47.)  In the optional box

16   for complainants to describe the reasons for the harassment, plaintiff Smith merely states "[a]s

17   noted in original complaint and to be addressed in lawsuit."  (*Id*. at 51.)  Like plaintiff Wilson,

18   plaintiff Smith has not pointed the court to any authority that supports this court's consideration

19   of the "Claim for Damages" form that plaintiff Smith submitted to the City.  Accordingly, the

20   court will dismiss plaintiff Smith's FEHA harassment claim against defendant Lacy.[6]

21         **B.     Section 1983 Equal Protection Claim (Eighth Cause of Action)**

22         Plaintiff Wilson asserts a claim under 42 U.S.C. 1983 against all defendants for allegedly

23   discriminating against her based on her race and depriving her of equal protection under the law

24   as guaranteed by the Equal Protection Clause of Fourteenth Amendment to the United States

25   Constitution.  (Compl. at ¶¶ 207–212.)  The Individual Defendants move to dismiss plaintiff

26

27   _____

[6]  Because the court will dismiss plaintiffs' FEHA harassment claims due to their failure to first
exhaust their administrative remedies as required, the court need not address the sufficiency
28   plaintiffs' allegations of harassment under FEHA.

1    Wilson's § 1983 claim because she has not sufficiently alleged facts showing that each defendant

2    caused the constitutional injury and specifying the wrongful conduct that each defendant is

3    alleged to have committed.  (Doc. No. 6-3 at 25–27.) [7]  Similarly, defendant Lacy moves to

4    dismiss this claim because plaintiff Wilson does not sufficiently allege a causal link between his

5    conduct and her alleged constitutional deprivation.  (Doc. Nos. 8-1 at 4; 17 at 3.)  The City moves

6    to dismiss this claim because plaintiff Wilson has not sufficiently alleged municipal liability

7    under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).  (Doc. No. 6-2 at 21–24.)

8         To bring a claim under § 1983, a plaintiff must allege facts showing that "a person acting

9    under color of state law . . . [engaged in] conduct [that] deprived the [plaintiff] of some right,

10   privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v.*

11   *Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988); *see also Thornton v. City of St. Helena,* 425 F.3d

12   1158, 1164 (9th Cir. 2005).  Generally, "[t]o make out a cause of action under section 1983,

13   plaintiff [] must plead that (1) the defendant[] acting under color of state law (2) deprived plaintiff

14   [] of rights secured by the Constitution or federal statutes."  *Gibson v. United States*, 781 F.2d

15   1334, 1338 (9th Cir. 1986). "There can be no liability under 42 U.S.C. § 1983 unless there is

16   some affirmative link or connection between a defendant's actions and the claimed deprivation."

17   *Michoff v. El Dorado Cty.*, No. 2:17-cv-02584-CKD-P, 2018 WL 2441583, at *3 (E.D. Cal. May

18   31, 2018) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).

19        "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

20   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

---

21   [7]  The Individual Defendants also raised the issue of the statute of limitations for § 1983 claims
22   briefly, with no analysis of that issue as it pertains to the plaintiffs' complaint.  (*See* Doc. No. 6-3
     at 27 n.3.)  Because neither party has adequately briefed this issue, the court does not base any
23   ruling in this order on the statute of limitations.  However, to the extent plaintiff Wilson elects to
     amend her complaint and continues to allege § 1983 claims, the court notes that the statute of
24   limitations for § 1983 claims brought in federal courts in California is two years.  *See Butler v.*
     *Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  "Under federal law, a
25   claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause
     of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).  And, the Supreme Court has
26   clarified that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal
27   to hire," are the kind of acts that must occur within the appropriate statute of limitations time
     period to support a discrimination claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.
28   101, 114 (2002).

1   direction that all persons similarly situated should be treated alike." *Serrano v. Francis*, 345 F.3d

2   1071, 1081 (9th Cir. 2003) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

3   (1985)). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that

4   the defendant acted with an intent or purpose to discriminate against him based upon his

5   membership in a protected class." *Serrano* 345 F.3d at 1082. "Intentional discrimination means

6   that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of*

7   *San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994) (emphasis in original) (citing *Pers. Adm'r of Mass.*

8   *v. Feeney*, 442 U.S. 256, 279 (1979)).

9              1.      Sufficiency of Plaintiff Wilson's Allegations for Individual Liability

10      "An official may be liable as a supervisor only if either (1) he or she was personally

11   involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the

12   supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d

13   809, 819–20 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *see also*

14   *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor

15   in his individual capacity is liable for a failure to supervise "hinges upon his participation in the

16   deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for

17   his own culpable action or inaction in the training, supervision, or control of his subordinates; for

18   his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous

19   indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*,

20   145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation,

21   the liability of a supervisor "depends upon 'whether he set in motion a series of acts by others, or

22   knowingly refused to terminate a series of acts by others, which he knew or reasonably should

23   have known, would cause others to inflict the constitutional injury.'" *Blankenhorn v. City of*

24   *Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (quoting *Watkins*, 145 F.3d at 1093). However,

25   conclusory allegations that a defendant "knew or should have known" of a serious risk do not

26   state a claim for relief. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Instead, a plaintiff

27   must allege facts from which it can be plausibly inferred that the defendant possessed such

28   knowledge. *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 70 n.8 (2d Cir. 2015) (holding that

12

the plaintiff's allegations that the defendant "knew about the discriminatory practice, without any

allegation as to how he knew or should have known of it is not sufficient").

Here, plaintiff Wilson has alleged that in each of the alleged incidents of racial

discrimination, defendant Lacy and the Individual Defendants were acting within the scope of

their employment as supervisors employed by the City.  (Compl. at ¶ 211.)  The court will now

address the sufficiency of plaintiff Wilson's allegations as to each of the Individual Defendants.

<center>*a.*     *Defendant Lacy (plaintiff Smith's supervisor)*</center>

Plaintiff Wilson alleges that defendant Lacy:  (i) caused her to get parking tickets even

though others did not receive parking tickets; (ii) bad mouthed her and influenced the City's

decisions not to hire or promote her; (iii) assigned her the oldest truck in the fleet despite her

seniority and resisted her efforts to get her truck detailed to clean off the caked-on mud and fix

the upholstery; (iv) assigned her work tools but not a tool bag, even though other employees are

immediately given a tool bag; (v) refused to let her pick up tires from customers on tire amnesty

day, even though that was the normal practice and non-African-American employees picked up

tires from customers that same day; (vi) yelled at defendant Clark for having filed a complaint

with HR on plaintiff Wilson's behalf regarding her claims that defendant Lacy was retaliating

against her; (vii) intentionally delayed approving repairs on her truck for several weeks, even

though other employees received timely repairs; (viii) refused to approve providing her with a

new truck, despite her seniority and the fact that the non-African-American employees driving the

other six trucks eligible for replacement all received new trucks; (ix) zip-tied her earbuds together

and threw them behind her workstation; (x) called her a racial epithet and told employees to stay

away from her; (xi) broke her reading glasses in half; (xii) told his staff at a meeting that she was

bringing drama to the department by accusing him of being a racist and then polled the staff

asking if they thought he was a racist; and (xiii) made a habit of congregating by her cubicle and

walking directly by her multiple times after she returned from administrative leave.  (*Id.* at ¶¶ 38,

44, 69, 77–79, 87, 108–109, 124–125, 148.)  Plaintiff Wilson further alleges that defendant Lacy

acted with intent to discriminate based on her race because "he has demonstrated his racial

animus against African-Americans over the last 15 years by uttering racist comments on

<center>13</center>

1  numerous occasions" and referring "to her as 'a no good piece of shit,' 'lazy,' 'playing the race

2  card,'" and with a racial epithet.  (*Id*. at ¶¶ 16, 27, 35; Doc. No. 14 at 19.)

3      The court finds that plaintiff Wilson has sufficiently alleged that defendant Lacy was

4  personally involved in the discriminatory conduct and that he acted with intent to discriminate

5  against her based on her race.  Accordingly, the court will deny defendant Lacy's motion to

6  dismiss plaintiff Wilson's § 1983 claim.

7          *b.      Defendant Burns (plaintiff Wilson's manager)*

8      In April 2018, when plaintiff Wilson responded to defendant Burns's recruitment email to

9  express her interest in being a mental health trainer, defendant Burns told her that she was not

10 eligible because of her job classification, and despite the fact that she had previously worked

11 outside of her classification numerous times, "'HR' was really cracking down on people working

12 out of class." (Compl. at ¶ 101.)  But the month prior, another non-African-American employee

13 "that had just been promoted to a CRS position was allowed to present a training to the entirety of

14 Code Enforcement." (*Id*.)

15     In May 2018, plaintiff Wilson met with defendant Burns "to address multiple concerns

16 she had with the department" and told him that another co-worker told her that she was being

17 bad-mouthed by various employees at the senior and supervisor meetings.  (*Id*. at ¶ 104.)

18 Defendant Burns responded that he was in those meetings and did not hear anyone speak about

19 her or bad-mouth her.  (*Id*.)  Plaintiff Wilson felt that defendant Burns brushed off her complaint

20 and essentially said that she was lying.  (*Id*.)

21     In July 2018, plaintiff Wilson asked defendant Burns why she had not been given a new

22 work truck, despite her seniority and her truck being the oldest in the fleet.  (*Id*. at ¶ 108.)

23 Defendant Burns told her that her truck was not up for replacement because it only had 80,000

24 miles on it, and after she showed him her mileage logs documenting a higher mileage, he said he

25 would look into it.  (*Id*.)  Later that day, defendant Burns told plaintiff she would get a new work

26 truck and "admonish[ed] her for not informing him of the condition of the truck earlier." (*Id*.)

27     When plaintiff Wilson told defendant Burns about finding her earbuds zip-tied together,

28 "he laughed and casually said something to the effect of 'Kiki, I don't know why people here do

the things they do.'" (*Id*. at ¶ 109.)  That same day, plaintiff asked defendant Burns "to tell staff not to disturb anyone's personal items," and he sent out an email to that effect.  (*Id*.)  No other investigation, inquiry, or remedy was provided for this alleged, as plaintiff Wilson characterizes it, invasion of privacy.  (*Id*.)

In August 2018, plaintiff Wilson returned to her desk after a meeting and found her reading glasses broken in half, and when she told defendant Burns, "his response was something to the effect of 'I can't believe anyone would be that petty.'" (*Id*. at ¶ 126.)  When she reminded him that she had been called the n-word, he said that he had never heard anyone use that word before.  (*Id*.)  Also in August 2018, defendant Burns and defendant Cuevas met with plaintiff Wilson and told her that she was being put on paid administrative leave and needed to return the city's property.  (*Id*. at ¶ 129.)  Defendant Burns "chose not to watch her pack up her personal belongings," but he escorted her from the building after she returned the city's equipment.  (*Id*.)  She was humiliated and felt like she was being punished.  (*Id*.)

The court finds that these allegations are insufficient to state a § 1983 claim against defendant Burns for racial discrimination.  Plaintiff Wilson has not alleged facts showing that defendant Burns was personally involved in discriminating against her based on her race, or that there is a causal link between defendant Burns' conduct and the alleged racial discrimination. Plaintiff Wilson also has not sufficiently alleged that defendant Burns's conduct constituted inaction in the supervision or control of his subordinates, that he acquiesced in racial discrimination against her, or that he showed "a reckless or callous indifference" to her rights. *See Starr*, 652 F.3d at 1208.  Moreover, to hold defendant Burns liable for the conduct of his subordinate defendant Lacy, who plaintiff Wilson alleges had zip-tied her earbuds, broke her glasses, and referred to her using a racial epithet, plaintiff Wilson must allege that defendant Burns "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *See Blankenhorn*, 485 F.3d at 485.  Plaintiff Wilson has not done so here. Indeed, plaintiff Wilson alleges that after she complained to defendant Burns about her zip-tied earbuds, defendant Burns sent an email to staff telling them not to disturb another staff member's

1  personal items (Compl. at ¶ 109), which does not show that he knowingly refused to terminate the

2  acts of others, and in fact, suggests the opposite.  Accordingly, the court will dismiss plaintiff

3  Wilson's § 1983 claim against defendant Burns for failure to state a claim but will grant leave to

4  amend as to this claim.

5          *c.  Defendant Cardell (Director of Personnel, HR)*

6     In December 2016, upon returning to work after more than three years of being laid off,

7  plaintiff Wilson met with her union attorney Ms. Heather Philips during her lunch break.

8  (Compl. at ¶ 71.)  During that meeting, defendant Cardell called Ms. Phillips to tell her that

9  plaintiff Wilson "had walked in that morning as if she owned the place and that she left campus

10  without anyone knowing and with the attitude that she didn't have to answer to anyone."  (*Id.*)

11  Plaintiff believes that no other employee of the City "has ever experienced anything remotely in

12  this realm of scrutiny and micromanagement."  (*Id.*)

13     In March 2017, plaintiff Wilson applied for a Housing Program Supervisor position but

14  was told she did not meet the minimum requirements and would have to provide documentation

15  to prove she had the qualifications and experience listed on her application.  (*Id.* at ¶ 81.)  Despite

16  demonstrating her qualifications, defendant Cardell refused to accept her application.  (*Id.*)  At

17  plaintiff Wilson's request, defendant Cardell's decision was reviewed by the Civil Service Board,

18  which determined that she absolutely met the requirements and was beyond qualified because she

19  had a year of experience as a project manager.  (*Id.*)  She was interviewed for the position, but "a

20  Caucasian male that had no Code Enforcement experience" was chosen instead.  (*Id.*)

21     In February 2018, plaintiff Wilson received a letter signed by defendant Cardell "that

22  purported to be the findings, or lack thereof, of the investigation into defendant Clark's complaint

23  on plaintiff Wilson's behalf from six months earlier," stating there were no discriminatory

24  findings, but not addressing either the retaliation or hostile work environment allegations.  (*Id.* at

25  ¶ 96.)  Plaintiff Wilson believes the letter was back dated to the week prior so it would not appear

26  that her meeting with defendant Clark the day before triggered the City to finally issue the

27  investigation "findings."  (*Id.*)  That same day, plaintiff Wilson met with defendant Cardell for

28  approximately three hours and asked him why she had been repeatedly passed over for

promotion.  (*Id*. at ¶ 97.)  Plaintiff Wilson told defendant Cardell that she was being blocked through the normal channels and hoped the City would get creative for her, like they had done for other employees; he smirked in response.  (*Id*.)  When plaintiff Wilson asked why his letter did not address her retaliation and hostile work environment claims, he responded "all of this about a bag?"  (*Id*.)  She proceeded to tell him all about her history with Ms. Rhonda Lacy[8] (who defendant Cardell selected to conduct the investigation) and that all of her complaints were handled by Ms. Lacy who consistently found nothing.  (*Id*. at ¶ 97.)  Defendant Cardell admitted that he could have hired an outside investigator and that he was unaware of plaintiff Wilson's history with Ms. Lacy.  (*Id*.)  Plaintiff Wilson told defendant Cardell, a Caucasian man, what it was like for her as an African-American woman, and that every African-American that had been hired in the Code Enforcement division since she started in 2004 had been fired, except for two men.  (*Id*.)  Defendant Cardell responded with something to the effect of "that's why I have two black women working for me," and plaintiff Wilson took this as acknowledgement of the problem and his weak attempt to combat the problem within his own department.  (*Id*.)

In August 2019, plaintiff Wilson requested copies of her medical records in her personnel file from HR, and although she usually waited in the lobby and received the copies after a few minutes, this time she was advised that the person who would complete her request was not there, but the receptionist would pass along her request.  (*Id*. at ¶ 157.)  Defendant Cardell's assistant called plaintiff Wilson to let her know the request was completed and the copies were being sent to her through inter-office mail.  (*Id*.)  Plaintiff immediately tried to reach HR and defendant Cardell to ask why the records were sent through inter-office mail, which provides no confidentiality protections, and she received no response.  (*Id*.)  Plaintiff Wilson went to the copy center herself to retrieve the records directly, but they had already been picked up by HR thirty minutes prior, so plaintiff Wilson went to HR to get them.  (*Id*.)  She reviewed the records and noticed a few items were missing, and she asked HR why that was the case and she was told that HR was still working on them.  (*Id*.)  Plaintiff Wilson alleges that this "tedious and petty

---

[8]  It does not appear from plaintiff Wilson's allegations that there is any relation between the Ms. Rhonda Lacy and defendant Lacy, though plaintiff does not explicitly so state.

1   experience with HR is entirely consistent with the disparate treatment based on her race that she

2   has been subjected to by" the City.  (*Id.*)

3         The court finds these allegations are insufficient to state a § 1983 claim against defendant

4   Cardell for racial discrimination.  Plaintiff Wilson has not sufficiently alleged a causal link

5   between HR's decision to send her medical records through inter-office mail and any alleged

6   racial discrimination.  Plaintiff Wilson has also not alleged a causal link between defendant

7   Cardell's conduct at her meeting with him in February 2018 and the alleged racial discrimination

8   that she described to him at that meeting.  It is not clear from her complaint what specific conduct

9   defendant Cardell engaged in that plaintiff Wilson contends constitutes racial discrimination

10   against her.  Accordingly, the court will dismiss plaintiff Wilson's § 1983 claim against defendant

11   Cardell for failure to state a claim, but will do so with leave to amend also being granted.

12         *d.     Defendant Clark (Director of DARM)*

13         In December 2016, when plaintiff Wilson returned from three years of being laid off, she

14   met with defendant Furtado and defendant Clark, who greeted her by saying "Hi La-Kebbia,

15   welcome back!" as if nothing had already transpired on her first day back.  (*Id.* at ¶ 72.)  Plaintiff

16   Wilson asked defendant Clark why defendant Cardell called her union attorney "as if she was

17   already in trouble on her very first day back," and defendant Clark "feigned surprise and

18   responded that they had been concerned that perhaps [she] didn't have any leave time on the

19   books and that perhaps [she] wasn't aware of the policies and procedures in the Code

20   Enforcement division."  (*Id.*)  Plaintiff Wilson explained that she was very familiar with the

21   policies and knew of no other employee who would have their time banks looked into if they

22   rescheduled a meeting or left for lunch, and she was disheartened that she was being treated this

23   way on her first day back.  (*Id.*)  Defendant Clark offered disingenuous condolences.  (*Id.*)

24         The court finds these allegations are insufficient to state a § 1983 claim against defendant

25   Clark for racial discrimination.  In her opposition brief, plaintiff Wilson directs the court to

26   paragraph 71 of the complaint for allegations showing that defendant Clark violated her equal

27   protection rights, but that paragraph does not allege any conduct on the part of defendant Clark.

28   (Doc. No. 13-1 at 33.)  At the hearing on the pending motions, the court asked plaintiffs' counsel

1  which paragraphs of the complaint supported plaintiff Wilson's discrimination claim against

2  defendant Clark.  Counsel referred the court to paragraphs 95, 96, 111, 112, and 150.  First,

3  paragraphs 96 and 150 do not allege any conduct by defendant Clark.  Second, none of the

4  allegations in paragraph 95, 111, and 112—that defendant Clark said she was not aware that the

5  City promoted 16 non-African-American employees instead of promoting plaintiff Wilson; that

6  when plaintiff Wilson told her about defendant Lacy's racial epithet defendant Clark "repeated

7  over and over that she didn't know what to say but that she would talk to HR"; and that defendant

8  Clark replied to plaintiff Wilson with a generic response that the City was taking her complaint

9  seriously—allege any causal link between conduct that defendant Clark engaged in and any

10  purported racial discrimination.  Accordingly, the court will also dismiss plaintiff Wilson's §

11  1983 claim against defendant Clark for failure to state a claim with leave to amend.

12  <div align="center">*e.*   Defendant Cuevas[9]</div>

13  In August 2018, plaintiff Wilson met with defendant Cuevas, defendant Burns, and her

14  union labor representative, Mr. Silva, regarding the complaint made against plaintiff Wilson for

15  her comment that "they're all fuckin' liars."  (*Id*. at ¶ 118.)  At that meeting, defendant Cuevas

16  said that "[p]laintiff Wilson could receive a Letter of Understanding for her actions."  (*Id*.)  When

17  Mr. Silva suggested that the City allow the outside investigator to complete an investigation of

18  plaintiff Wilson's most recent complaint against defendant Lacy before deciding that she

19  deserved a letter of understanding, defendant Cuevas "flatly said no, again demonstrating [the]

20  City's willingness to ignore complaints made by African-American employees alleging especially

21  egregious behavior, yet promptly and unabashedly investigate a complaint made by a Caucasian

22  employee regarding his fabricated hurt feelings by the innocent actions of another."  (*Id*.)

23  Defendant Cuevas told plaintiff Wilson about the email she received from Mr. Skei describing the

24  incident where plaintiff Wilson pointed at him and said "they're all fuckin' liars – all of them,"

25  and she appeared indifferent when plaintiff Wilson said she did not point at anyone and was

26  clearly distraught and emotional at that time.  (*Id*.)  Plaintiff Wilson said only Ms. Flores and Mr.

27

28  _____

[9]  In the complaint, plaintiffs provide no job title/position for defendant Cuevas.

1    Skei could see where she was looking and if and at whom she was pointing, but defendant Cuevas

2    insisted she had other witnesses.  (*Id.*)  Plaintiff Wilson believes that "[d]efendant Cuevas

3    fabricated evidence to justify plaintiff Wilson's ultimate discipline in this matter."  (*Id.*)  When

4    plaintiff Wilson expressed her shock that the City would discipline her for using colorful

5    language when that is common in Code Enforcement, including by supervisors and managers,

6    like defendant Burns, neither defendant Burns nor defendant Cuevas responded.  (*Id.*)  When

7    plaintiff Wilson said she was being singled out and treated disparately, defendant Cuevas

8    responded that the City has addressed unprofessional behavior and language in the past with

9    letters of understanding and letters of reprimand, and that if the City did not discipline her at this

10   stage, then that would be disparate treatment.  (*Id.*)  Plaintiff Wilson reminded defendant Cuevas

11   that she had just learned she had been called the n-word and was trying to address it, and Mr.

12   Silva interjected to end the interview because plaintiff Wilson was becoming emotional.  (*Id.*)

13   When they resumed a second meeting later that month, defendant Cuevas said the City was

14   looking into the entire incident but continued to stress that plaintiff Wilson's reaction was

15   inappropriate.  (*Id.* at ¶ 127.)  Defendant Cuevas stated that plaintiff Wilson would receive a letter

16   of reprimand, even though she previously said a letter of understanding would be given.  (*Id.*)

17   This second meeting confirmed that the City was "more committed to investigating and handing

18   down discipline for trivial and falsified complaints by Caucasian employees than prioritizing or

19   taking any action whatsoever on complaints made by African-American employees, even when

20   the complaint involves the worst racial slur possible."  (*Id.*)

21       In August 2018, defendant Cuevas scheduled a training for all management and

22   supervisorial staff regarding professional behavior and language in the workplace, showing that

23   the City takes complaints made by their Caucasian employees seriously, but that the City took

24   zero steps to investigate plaintiff Wilson's obviously more serious complaint that defendant Lacy

25   referred to her using a racial epithet.  (*Id.* at ¶ 122.)

26       The court finds these allegations are insufficient to state a § 1983 claim against defendant

27   Cuevas for racial discrimination.  Plaintiff Wilson has not alleged any facts showing that

28   defendant Cuevas was personally involved in discriminating against her based on her race, or that

20

1    there is a causal link between defendant Cuevas's conduct in addressing a Caucasian employee's

2    complaint about plaintiff Wilson allegedly calling her superiors "fuckin' liars," and defendant

3    Cuevas's alleged inaction in addressing plaintiff Wilson's complaints about defendant Lacy.

4    Plaintiff Wilson has also not alleged that defendant Cuevas was a supervisor of subordinates

5    whose conduct violated plaintiff Wilson's rights, such that defendant Cuevas would be liable for

6    their conduct.  Accordingly, the court will dismiss plaintiff Wilson's § 1983 claim against

7    defendant Cuevas for failure to state a claim with leave to amend.

8                          f.      *Defendant Estabrooke (then-parking manager, since retired)*

9            In June 2013, then-parking manager, defendant Estabrooke, issued a parking ticket to

10   plaintiff Wilson for parking her work vehicle on city property.  (*Id*. at ¶ 38.)  He told her that

11   defendant Lacy and Elaine Robles told him to ticket her and another employee from code

12   enforcement, and that he also ticketed an employee from another department "because [defendant

13   Estabrooke] thought it would be too obvious if they only ticketed plaintiff Wilson and the other

14   code enforcement employee.  (*Id*.)  Defendant Estabrooke eventually voided the ticket.  (*Id*.)

15           In December 2016, plaintiff Wilson asked that tall partitions be installed at her work

16   cubicle, which was the only cubicle without tall partitions, and defendant Estabrooke initially

17   brushed her off and then went to look at her cubicle.  (*Id*. at ¶ 74.)  Due to her persistence, tall

18   partitions were installed.  (*Id*.)

19           In October 2018, despite having retired a year prior, defendant Estabrooke came to the

20   code enforcement offices looking for defendant Lacy, and when another employee told him that

21   defendant Lacy was on administrative leave, he told that employee to tell defendant Lacy that he

22   would vouch for him.  (*Id*. at ¶ 132.)

23           The court finds these allegations are insufficient to state a § 1983 claim against defendant

24   Estabrooke for racial discrimination.  Plaintiff Wilson has not alleged facts showing that

25   defendant Estabrooke was personally involved in discriminating against her based on her race, or

26   that there is a causal link between defendant Estabrooke's conduct and the alleged racial

27   discrimination.  Accordingly, the court will dismiss plaintiff Wilson's § 1983 claim against

28   defendant Estabrooke for failure to state a claim and with leave to amend.

g.     *Defendant Furtado (then-Asst. Dir. of DARM, since resigned)*

In December 2016, when plaintiff Wilson returned from three years of being laid off, she met with defendant Furtado and defendant Clark.  (*Id*. at ¶ 72.)  Plaintiff Wilson explained that she felt disheartened that she was being treated differently on her first day back, and after defendant Clark offered disingenuous condolences, plaintiff Wilson responded by saying this was normal, and defendant Furtado rolled her eyes.  (*Id*.)  Besides obviously negative body language and gestures, defendant Furtado said nothing during the meeting.  *Id*.

In March 2017, plaintiff Wilson met with an auditor from the U.S. Office of the Inspector General, but defendant Furtado and defendant Watkins attempted to prevent other staff from meeting with the auditor and admonished staff who had already done so.  (*Id*. at ¶ 82.)  Defendant Furtado was very unhappy with plaintiff Wilson and let her know these feelings.  (*Id*.)

The court finds these allegations are insufficient to state a § 1983 claim against defendant Furtado for racial discrimination.  In her opposition to the pending motions, plaintiff Wilson directs the court to paragraph 71 of the complaint for allegations showing defendant Furtado violated her equal protection rights, but that paragraph does not allege any conduct by defendant Furtado.  (Doc. No. 13-1 at 33.)  Similarly, at the hearing on the pending motions, plaintiffs' counsel directed the court to paragraph 84 of the complaint in this regard, but that paragraph also does not allege any conduct by defendant Furtado.  Accordingly, the court will also dismiss plaintiff Wilson's § 1983 claim against defendant Furtado for failure to state a claim and with leave to amend.

h.     *Defendant Watkins (plaintiff Wilson's supervisor)*

In December 2016, plaintiff was informed that defendant Watkins was asking various other employees about plaintiff Wilson's whereabouts and asking them to keep an eye out for her, and he continued to do so for the next 18 months.  (*Id*. at ¶ 73.)  Defendant Watkins did not keep track of any other employees' whereabouts in this manner.  (*Id*.)

In August 2017, defendant Watkins told plaintiff Wilson that she needed to move her work vehicle from the City Hall parking.  (*Id*. at ¶ 86.)  Plaintiff Wilson believes that she was the only city employee told to move and that defendant Lacy was behind this, given his direction

1    several years earlier that she be given a parking ticket.  *Id.*  Defendant Watkins admitted that

2    defendant Lacy brought this to his attention, but he offered her no response when she told him

3    this was defendant Lacy attempting to retaliate.  (*Id.*)

4        In February 2018, plaintiff Wilson was asked by defendant Burns to work an evening shift

5    starting at 4:00 p.m. for a Mardi Gras event, and she agreed.  (*Id.* at ¶ 99.)  Defendant Watkins

6    called plaintiff Wilson's work cell phone in the afternoon and then sent an email asking if she was

7    at work that day.  (*Id.*)  After receiving no response, defendant Watkins called her home phone

8    and asked if she was in the office because no one had seen her, and she missed a department-wide

9    meeting that morning.  (*Id.*)  She told him she was working the special late shift and was not

10   expected to be in the office, and he provided no explanation for why he was aggressively

11   searching for her, though he later said it was because he was concerned about her safety.  (*Id.*)

12   Defendant Watkins confirmed that defendant Burns had spoken to him about the inappropriate

13   nature of his actions, and he apologized to plaintiff Wilson.  (*Id.*)

14       In June 2018, plaintiff Wilson requested to take a vacation day and defendant Watkins

15   told her that she needed to take a sick day because of the short notice of her same-day request,

16   and after a string of emails, plaintiff Wilson provided a copy of the Administrative Orders to

17   prove that she was allowed to use a vacation day.  (*Id.* at ¶ 106.)  Plaintiff believes that no other

18   city employee has had to provide proof that they are allowed to take vacation days.  (*Id.*)

19       The court finds these allegations are insufficient to state a § 1983 claim against defendant

20   Watkins for racial discrimination.  Plaintiff Wilson has not sufficiently alleged a causal link

21   between defendant Watkins's conduct and her allegations of racial discrimination.  Plaintiff

22   Wilson has also not sufficiently alleged that defendant Watkins was motivated in part because of

23   her race when he told her to move her city vehicle, inquired about her whereabouts, or denied her

24   request for a vacation day.  It is not clear from the complaint what specific conduct defendant

25   Watkins engaged in that plaintiff Wilson contends constitutes racial discrimination against her.

26   Moreover, plaintiff Wilson alleges that defendant Watkins retaliated against her—not because of

27   her race—but because she knew about his sexual relationship with a subordinate and she told his

28   manager about it.  (*Id.* at ¶ 104.)  Accordingly, the court will dismiss plaintiff Wilson's § 1983

1    claim against defendant Watkins for failure to state a claim, with leave to amend.

2              2.      Sufficiency of Plaintiffs' Allegations of Municipal Liability

3         It is well-established that "a municipality cannot be held liable *solely* because it employs a

4    tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

5    *superior* theory." *Monell*, 436 U.S. at 691; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397,

6    403 (1997).  To establish municipal liability under *Monell*, a plaintiff must allege and ultimately

7    prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that

8    the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

9    plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

10   constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)

11   (citation omitted); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) ("[A]

12   plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the

13   municipality] was 'the actionable cause of the claimed injury.'") (quoting *Harper v. City of Los*

14   *Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).

15        A plaintiff can establish municipal liability under *Monell* in one of three ways.  *See*

16   *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).  First, a local government may

17   be held liable when it acts "pursuant to an expressly adopted policy."  *Id.* (citing *Monell*, 436 U.S.

18   at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).  Second, a public entity may be held

19   liable for a "longstanding practice or custom."  *Thomas*, 763 F.3d at 1170.  "Third, a local

20   government may be held liable under § 1983 when 'the individual who committed the

21   constitutional tort was an official with final policy-making authority' or such an official 'ratified a

22   subordinate's unconstitutional decision or action and the basis for it.'"  *Clouthier v. Cty. of Santa*

23   *Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (citation omitted).

24        Here, plaintiff Wilson argues that she can establish municipal liability because she alleged

25   that:  (1) the City "created a policy of inaction when it came to violations of her constitutional

26   rights to be free from discrimination, harassment, and retaliation and that the individual

27   Defendants were operating pursuant to that policy"; and (2) each of the Individual Defendants

28   /////

                                             24

1   were final policy-makers and made the decisions or ratified the decisions of other Individual

2   Defendants.  (Doc. No. 13 at 23.)

3         First, plaintiff Wilson's conclusory allegation that the City "has created a policy of

4   inaction, in which it is deliberately indifferent to violations of the anti-discrimination, harassment,

5   and retaliation laws and policies and the individual Defendants were following this policy of

6   inaction when they committed each of the racially-motivated discriminatory acts" (Compl. at ¶

7   212) is insufficient to state such a claim.  "[T]o properly plead a claim under *Monell*, it is

8   insufficient to allege simply that a policy, custom, or practice exists that caused the constitutional

9   violations."  *Brown v. Contra Costa Cty.*, No. 12-cv-1923-PJH, 2014 WL 1347680, at *8 (N.D.

10   Cal. Apr. 3, 2014) ("The allegation that defendants discriminated against African-American

11   employees (including plaintiff) in the DA's office is not sufficient to support a claim that there

12   was an official policy or custom of discrimination.  And, even if it were, plaintiff still has not

13   alleged facts showing that discrimination against African-American attorneys is a long-standing

14   or widespread custom or practice at the Contra Costa DA's office.") (citing *AE ex rel. Hernandez*

15   *v. Cty. of Tulare*, 666 F.3d 631, 636–637 (9th Cir. 2012)).  Here, plaintiff Wilson has not

16   sufficiently alleged that the City had a "longstanding practice or custom" of purported inaction,

17   which plaintiff alleges is based on the City's handling of plaintiff Wilson's complaint against

18   defendant Lacy for his racist comments, particularly defendant Lacy's use of a racial epithet to

19   refer to plaintiff Wilson.  "Liability for improper custom may not be predicated on isolated or

20   sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

21   consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v.*

22   *Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*,

23   250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A

24   single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or

25   custom."); *Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 5068567, at *5 (N.D.

26   Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims to proceed at the motion to

27   dismiss stage, plaintiffs have pled multiple incidents of alleged violations.").  The incidents

28   plaintiff Wilson alleges in her complaint are isolated and infrequent, and do not demonstrate that

1   discriminating against her based on her race had become the City's "traditional method of

2   carrying out policy." *See Trevino*, 99 F.3d at 918. This is particularly true given that the court

3   finds plaintiff's allegations of racial discrimination to be sufficient only as to defendant Lacy and

4   not as to the Individual Defendants.

5          Second, plaintiff Wilson alleges in conclusory fashion that "each individual Defendant

6   was a final policy-maker in that each was a supervisor with authority in each of their particular

7   areas and therefore their racially-motivated discriminatory actions would constitute an act of an

8   official governmental policy; and/or each individual Defendant was a final policy-maker in that

9   each was a supervisor with authority in each of their particular areas and they, as such final

10  policy-maker, ratified the acts of either subordinate Defendant CITY employees or of other

11  individual Defendants." (Compl. at ¶ 212.) The court finds that this allegation is also insufficient

12  to establish municipal liability because, as set forth above, plaintiff has not alleged any racially-

13  motivated discriminatory actions by the Individual Defendants. Moreover, plaintiff has not

14  sufficiently alleged facts showing that the Individual Defendants ratified defendant Lacy's

15  allegedly discriminatory actions.

16         Accordingly, the court will dismiss plaintiff Wilson's § 1983 claim against the City for

17  failure to state a claim with leave to amend.

18         **C.      Section 1981 Discrimination Claim (Ninth Cause of Action)**

19         Plaintiff Wilson asserts a claim under 42 U.S.C. § 1981 against all defendants for

20  allegedly discriminating against her based on her race. (Comp. at ¶¶ 213–217.) The Individual

21  Defendants and defendant Lacy move to dismiss plaintiff Wilson's § 1981 discrimination claim

22  for failure to state a claim and because individuals cannot be held liable under § 1981.[10] (Doc.

23  _____

24  [10] The Individual Defendants and defendant Lacy have not provided any authority to support
    their position that individuals cannot be held liable under § 1981. When asked by the court at the

25  January 22, 2020 hearing for supporting authority, counsel for defendant Lacy acknowledged that
    he could not point to any authority and may be wrong in his assertion. The court notes that the

26  Ninth Circuit has not spoken on this issue, but other circuits and numerous district courts in the
    Ninth Circuit have concluded § 1981 "gives rise to individual liability." *Thomas v. Starz Entm't*

27  *LLC*, No. 2:15-cv-09239-CAS(MRWx), 2016 WL 844799, at *6 (C.D. Cal. Feb. 29, 2016) (citing
    cases and concluding "while the Ninth Circuit may not have definitively weighed in on the scope

28  of liability under section 1981, the weight of authority holds that individuals may be held liable

Nos. 6-3 at 27; 8-1 at 5.)  The City moves to dismiss this claim because plaintiff Wilson has not sufficiently alleged municipal liability.  (Doc. No. 6-2 at 25.)

"Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences."  *Flores v. City of Westminster*, 873 F.3d 739, 752 (9th Cir. 2017) (citing 42 U.S.C. § 1981).  To state a claim under § 1981, plaintiffs must alleges that:  "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)."  *Jackson v. California*, No. 1:13-cv-01055-LJO-SA, 2014 WL 931800, at *1 (E.D. Cal. Mar. 10, 2014) (quoting *Morris v. Office Max, Inc*., 89 F.3d 411, 413 (7th Cir. 1996)).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981.

Here, the court finds that plaintiff Wilson has failed to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff Wilson re-incorporates over 200 paragraphs spanning over 90 pages of the complaint, but she does not clearly and succinctly allege facts pertaining to the second and third elements of her § 1981 claim for discrimination; notably, how each defendant had an intent to discriminate on the basis of her race and how that discrimination concerned a contractual relationship.  In addition, for the reasons set forth above, the court agrees with the City's argument that plaintiff has not sufficiently pled municipal liability, which is required for her § 1981 discrimination claim against the City.  *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (concluding Congress intended the traditional "policy or custom" requirement set forth in *Monell* to apply to § 1981 claims).  Accordingly, plaintiff Wilson's § 1981 discrimination claims against all

---

under section 1981"); *see also Mility v. Cty. of Kern*, No. 1:17-cv-0446-JLT, 2018 WL 3753021, at *4 (E.D. Cal. Aug. 6, 2018) (noting "several other circuit courts have determined individuals may be held liable for violations of rights provided under").

1   defendants are dismissed for failure to state a claim and failure to comply with Rule 8.

2   Nonetheless, leave to amend will be granted.

3         **D.**      **Section 1981 Harassment Claim (Tenth Cause of Action)**

4         Plaintiff Wilson asserts a § 1981 claim for harassment against all defendants, but her

5   allegations indicate that she intends to bring a claim for a hostile work environment.  (*See* Compl.

6   at ¶ 219.)  Defendant Lacy and the Individual Defendants move to dismiss plaintiff Wilson's

7   § 1981 hostile work environment claim for failure to state a claim.  (Doc. Nos. 6-3 at 27; 8-1 at

8   5.)  The City moves to dismiss plaintiff Wilson's § 1981 hostile work environment claim because

9   she has failed to sufficiently allege municipal liability.  (Doc. No. 6-2 at 25.)  As explained above,

10  the court agrees that plaintiff has not sufficiently pled a claim for municipal liability.

11  Accordingly, the court will dismiss plaintiff Wilson's § 1981 hostile work environment claim

12  against the City for failure to state a claim, but will grant leave to amend.

13        "A hostile work environment interferes with the 'enjoyment of all benefits . . . and

14  conditions of the contractual relationship' of employment and is therefore actionable under

15  § 1981.  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003).  To state a claim for a

16  hostile work environment under § 1981, plaintiff must allege:  "(1) she was subjected to verbal or

17  physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was

18  sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

19  work environment."  *Id.* at 799 (internal quotation marks omitted).  A plaintiff must allege facts

20  showing that "the conduct at issue was both objectively and subjectively offensive: . . . that a

21  reasonable person would find the work environment to be 'hostile or abusive,' and that he in fact

22  did perceive it to be so."  *Dawson v. Entek Int'l*, 630 F.3d 928, 938 (9th Cir. 2011).

23        Here, plaintiff Wilson alleges that she was subjected to unwelcome harassment because of

24  her race on numerous occasions by every defendant.  (Compl. at ¶ 186.)  However, as the court

25  has explained above, plaintiff Wilson's allegations of conduct by the Individual Defendants do

26  not sufficiently state a claim for racial discrimination, and she has not sufficiently alleged facts

27  showing that their actions were racially motivated and severe or pervasive.  *See Manatt*, 339 F.3d

28  at 799.  Accordingly, the court will also dismiss plaintiff Wilson's § 1981 hostile work

environment claim against the Individual Defendants for failure to state a claim and with leave to amend.

Plaintiff Wilson's allegation regarding defendant Lacy using a racial epithet may support her § 1981 hostile work environment claim, if she can also allege that his conduct was sufficiently severe or pervasive.[11]   The court concludes that plaintiff Wilson has not sufficiently alleged the severity and pervasiveness of defendant Lacy's conduct, particularly telling plaintiff Smith, on one occasion, that plaintiff Wilson was an entitled n-word.   Accordingly, the court will dismiss plaintiff Wilson's § 1981 hostile work environment claim against defendant Lacy for failure to state a claim and with leave to amend.

**E.   Section 1981 Retaliation Claim (Eleventh Cause of Action)**

Plaintiff Wilson asserts a § 1981 claim for retaliation against all defendants.  (Compl. at ¶¶ 223–227.)  The Individual Defendants and defendant Lacy move to dismiss that § 1981 retaliation claim for failure to state a claim.  (Doc. Nos. 6-1 at 3; 8 at 3.)  The City moves to dismiss plaintiff Wilson's § 1981 retaliation claim for failure to state a claim and failure to sufficiently allege municipal liability under *Monell*.  (Doc. Nos. 6-2 at 25; 18 at 6–7.)

To state a § 1981 claim for retaliation, a plaintiff must allege facts showing that:  "(1) [she] engaged in protected conduct; (2) [her] employer took an adverse action against [her]; and (3) there was a causal connection between [her] protected activity and the adverse employment action." *Shahrivar v. City of San Jose*, 752 F. App'x 415, 418–19 (9th Cir. 2018).[12]  Causation "may be inferred from the proximity in time between the protected action and the allegedly

/////

---

[11]  As the Ninth Circuit has noted, "[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004) (finding plaintiff had demonstrated he was subjected to hostile work environment where he endured extreme racial taunts and insults, including being called "nigger" on many occasions); *see also Mility v. Cty. of Kern*, No. 1:17-cv-0446-JLT, 2018 WL 3753021, at *5 (E.D. Cal. Aug. 6, 2018) (finding that the plaintiff sufficiently stated claim for hostile work environment under § 1981 against a co-worker who had repeatedly referred to him as a "nigger," on a weekly basis).

[12]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

retaliatory employment decision." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (internal quotations omitted).

Here, plaintiff Wilson alleges that she engaged in protected conduct on an ongoing basis over the last fifteen years by vocally objecting in meetings with defendants Cardell, Clark, Burns, and Cuevas about the City's treatment of her, by making formal and informal complaints internally with the City, and by filing complaints with the EEOC, with the DFEH, and in a civil lawsuit against the City.  (Compl. at ¶ 191.)  Plaintiff Wilson alleges that she has suffered countless adverse employment actions:  (i) she was never promoted despite applying, testing, and interviewing for hundreds of positions over fifteen years; (ii) the City either ignored her complaints about the discrimination, harassment, and retaliation she suffered or fashioned a makeshift investigation only to find no violations; (iii) she was laid off for three years despite having seniority, and the City prevented her from being reinstated despite being first on the reinstatement list; (iv) the City gave her a Letter of Reprimand based on a fabricated complaint with insufficient or fabricated evidence; (v) the City forced her to work alongside defendant Lacy for more than a month after she filed her complaint about him using a racial epithet and again after returning from paid administrative leave a year later; (vi) defendant Watkins authored a retaliatory evaluation of plaintiff Wilson's work based on mischaracterized or fabricated "facts"; (vii) defendant Cardell issued a one paragraph memo to her saying the 14-month investigation into her complaint about defendant Lacy was complete and no violations were found; and (viii) she was suspended for three days without pay based on manipulated "facts" that were taken out of context.  (*Id.* at ¶ 181.)

As to causation, plaintiff Wilson alleges that "each adverse action can be traced back to the fundamental principle that Defendant City and its employees do not appreciate that plaintiff Wilson has been so vocal about their discrimination, harassment, and retaliation that has been waged against her because of her race."  (*Id.* at ¶ 191.)  Then, plaintiff Wilson "provides a sampling of the direct connection between some of the adverse actions and plaintiff Wilson's protected activities," and those allegations allude to temporal proximity as the basis for finding /////

1  causation.[13]  (*Id*.)  But the temporal proximity that plaintiff Wilson alludes to is not the time

2  between the protected activity and the adverse employment action.  For example, she alleges that

3  she "was disciplined for her alleged actions that occurred literally minutes after she found out that

4  defendant Lacy had called her an 'entitled nigga' and while she was physically on her way to

5  report it."  (*Id*.)  The phrase "literally minutes after" refers to plaintiff Wilson making the

6  comment that "they're all fuckin' liars"—which plaintiff Wilson has not alleged to be protected

7  activity.  Moreover, she has failed to allege any causal connection between the discipline she

8  received for making that comment (the adverse employment action) on the one hand, and her

9  complaining to the City about defendant Lacy's racial epithet comment (the protected activity),

10  on the other.  In other words, plaintiff Wilson has not alleged any facts to show that she was

11  disciplined *because* she complained about defendant Lacy's comment.

12  　　　　Further, with the exception of defendant Watkins, none of the other Individual Defendants

13  are referred to in plaintiff Wilson's allegations purportedly demonstrating causation.  Even the

14  allegations against defendant Watkins—that he issued plaintiff Wilson's only negative

15  performance evaluation after finding out that she reported his sexual relationship with a

16  subordinate to his manager—do not sufficiently demonstrate causation.  Plaintiff Wilson does not

17  allege facts about if, when, or how defendant Watkins ever became aware of her reporting his

18  alleged relationship.  From the allegations in the complaint, it is not clear that defendant Watkins

19  ever knew that plaintiff Wilson had reported his alleged sexual relationship with a subordinate

20  (which she did in May 2018), let alone that her reporting activity caused him to provide a

21  negative performance evaluation fifteen months later in August 2019.  (*See id*. at ¶¶ 104, 150.)

22  /////

23

24  ───────────────────────

[13]  Plaintiff Wilson includes in this sampling her allegations of the city council's reliance on
anonymous emails encouraging her layoff in 2013.  (Compl. at ¶ 191.)  The court pauses to note

25  that it appears this incident occurred outside the four-year statute of limitations period for § 1981
retaliation claims.  *See Johnson v. Lucent Techs. Inc*., 653 F.3d 1000, 1006 (9th Cir. 2011)

26  (deciding that plaintiff's § 1981 claims are subject to a four-year limitations period).  Because
neither party has adequately briefed either this issue or plaintiff Wilson's argument that there has

27  been a continuing violation, the court does not base any rulings in this order based on the statute

28  of limitations.

In their reply brief, the Individual Defendants argue that plaintiff Wilson "should be required to plead each element and claim concisely, and not require the Defendants or this Court to ferret through allegations scattered throughout the Complaint." (Doc. No. 16 at 17.)  The court agrees.  Plaintiff Wilson has not complied with Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Accordingly, the court will dismiss plaintiff Wilson's § 1981 retaliation claim against all defendants for failure to comply with Rule 8 and failure to state a claim, while granting leave to amend with respect to that claim.  Plaintiff Wilson is advised that in any amended § 1981 retaliation claim, she must allege facts showing each of the elements with respect to each of the named  defendants that she contends is liable for retaliation.  This includes identifying which protected activity she contends caused which adverse action and alleging facts showing the causal link between the two.  Plaintiff Wilson's method of grouping and listing all of her protected activity, and then separately listing adverse actions, is not effective to allege and show causal links.  In fact, this method of presentation makes it impossible to know which event—the protected activity or the adverse action—occurred first, without tediously cross-referencing all of plaintiff Wilson's allegations in her 107-page complaint.  The court will not engage in such a task.

### F.    California Labor Code § 1102.5 Claim (Twelfth Cause of Action)

Plaintiff Wilson also asserts a retaliation claim under California Labor Code § 1102.5 against all defendants, and plaintiff Smith asserts a § 1102.5 retaliation claim against the City, defendant Lacy, and defendant Burns.  (Compl. at ¶¶ 228–231.)  Defendant Lacy and the Individual Defendants move to dismiss plaintiffs' § 1102.5 claim on the grounds that only employers can be held liable under that provision, not individuals.  (Doc. Nos. 6-3 at 19–20; 8-1 at 6.)

To establish liability under § 1102.5, an employee must allege and show:  (1) that she engaged in protected activity; (2) that she was thereafter subjected to an adverse employment decision by her employer; and (3) that there was a causal link between the protected activity and the adverse employment action.  *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287-88

1   (2006); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 62, 69 (2000); *United States v.*

2   *Heath*, No. 13-cv-01924-SI, 2016 WL 3540954, at *13 (N.D. Cal. June 29, 2016).

3   "Whistleblower protections under Cal. Labor Code § 1102.5(B) are also based upon an

4   employer/employee relationship." *Phillips-Kerley v. City of Fresno*, No. 1:18-cv-438-AWI-

5   BAM, 2018 WL 5255224, at *3 (E.D. Cal. Oct. 19, 2018).  The California Supreme Court has not

6   spoken on the issue of whether individuals can be held liable under § 1102.5, but many district

7   courts have found that "section 1102.5 does not impose individual liability on supervisors."

8   *Bales v. Cty. of El Dorado*, No. 2:18-cv-01714-JAM-DB, 2018 WL 4558235, at *2 (E.D. Cal.

9   Sept. 20, 2018) (citing cases and reviewing existing precedent and legislative history).  This court

10  agrees that there is no individual liability under § 1102.5.

11          Accordingly, the court will dismiss plaintiffs' § 1102.5 claims against the Individual

12  Defendants and defendant Lacy for failure to state a claim and will do so with prejudice.

13          **G.      Civil Code § 46 Claim for Slander (Thirteenth Cause of Action)**

14          Plaintiff Wilson next asserts a slander claim under California Civil Code § 46 against the

15  City and defendant Lacy.  (Compl. at ¶¶ 232–235.)  Defendant Lacy moves to dismiss the slander

16  claim for failure to state a claim and because it is time-barred.[14]  (Doc. No. 8-1 at 7.)

17                  1.      <u>Sufficiency of Plaintiff Wilson's Allegations of Slander</u>

18          Slander is defined as "a false and unprivileged publication, orally uttered, [] which: . . .

19  [t]ends directly to injure [any person] in respect to his office, profession, trade or business, either

20  by imputing to him general disqualification in those respects which the officer or other

21  occupation peculiarly requires, or by imputing something with reference to his office, profession,

22  trade, or business that has a natural tendency to lessen its profits . . .."  Cal. Civ. Code § 46.  To

23  state a claim for slander, a plaintiff must allege and ultimately establish "the intentional

24  _____

25  [14]  Defendant Lacy also argues that the slander claim should be dismissed for lack of subject
    matter jurisdiction because plaintiff Wilson has not alleged that she complied with the California
26  Tort Claims Act's which requires that she must first submit her claim to the City, and the City
    must reject it, before she can file her claim in court.  (Doc. No. 8-1 at 7.)  In opposition, plaintiff
27  Wilson points to her allegation that she submitted her claims to the City and that the City rejected
    her claims.  (Compl. at ¶ 177.)  The court finds plaintiff Wilson has sufficiently alleged her
28  compliance with the California Tort Claims Act.

1   publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure

2   or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).

3   "Publication" in this context means "communication to a third person who understands the

4   defamatory meaning of the statement and its application to the person to whom reference is

5   made." *Id.* Further, "[a] false and unprivileged oral communication attributing to a person

6   specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other

7   derogatory statements regarding a person, constitutes slander." *Rangel v. Am. Med. Response W.*,

8   No. 1:09-cv-01467-AWI, 2013 WL 1785911, at *6 (E.D. Cal. Apr. 25, 2013) (citing *Shively v.*

9   *Bozanich*, 31 Cal. 4th 1230, 1242 (2003)).

10       Here, plaintiff Wilson alleges that defendant Lacy, while acting within the scope of his

11   employment with the City, told his subordinate, plaintiff Smith, in December 2016 to stay away

12   from plaintiff Wilson "because she's a no good piece of shit," "she's lazy," and that when

13   everyone got laid off, the only reason she got her job back was because she "played the race

14   card." (Compl. at ¶ 234.)  Plaintiff Wilson contends that each of these characterizations about her

15   work performance and ethic is patently false and were intended to injure her employment

16   reputation. (*Id*.)  Plaintiff Wilson also alleges that on June 28, 2018, defendant Lacy told plaintiff

17   Smith that:  "Kiki is an entitled nigga.  I'm not saying nigger.  I'm saying nigga-N-I-G-G-A."

18   (*Id*. at ¶ 235.)  Plaintiff asserts that because racial epithets are never true, "this statement is as

19   false as it is offensive" and damages her personal and professional reputation because defendant

20   Lacy "was attempting to use the slur as a categorization of [her] employment abilities and status

21   based on her race." (*Id*.)

22       The court finds that defendant Lacy's statements about plaintiff Wilson being lazy and a

23   "no good piece of shit" are opinions that are not actionable as slander.[15]  As to defendant Lacy's

24

25   [15] A plaintiff bringing a defamation claim has the burden of alleging the existence of an
actionable falsehood. *See Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010).  "Because the

26   statement must contain a provable falsehood, courts distinguish between statements of fact and
statements of opinion for purposes of defamation liability." *McGarry v. Univ. of San Diego*, 154

27   Cal. App. 4th 97, 112 (2007).  While statements of fact may be actionable as defamation,
statements of opinion are constitutionally protected. *See Liberman v. Fieger*, 338 F.3d 1076,

28   1079 (9th Cir. 2003).  To determine whether a statement is fact or opinion, courts consider the

1   use of a racial epithet and stating that plaintiff Wilson "played the race card," the court finds that

2   those statements are actionable as slander.  *See Diversified Commc'ns Servs., Inc. v. Landmark*

3   *Am. Ins*, No. 08-cv-7703-PSG-(SSX), 2009 WL 772952, at *5 (C.D. Cal. Mar. 17, 2009)

4   (discussing "whether a racial epithet, such as 'nigger,' is a defamatory statement for the purposes

5   of defamation law").  In *Diversified Commc'ns Servs.*, an employee brought a slander claim

6   alleging that his supervisor and co-workers began calling him "nigger" and making other

7   demeaning racial comments to him.  *Id*. at *1.  The court concluded that use of the n-word

8   "carries with it the weight of the collective historical experience of discrimination, complete with

9   intimations of inferiority," and "since racial epithets often attribute to a person specific

10  unfavorable characteristics, . . . [b]y calling someone a 'nigger,' the speaker demeans the subject

11  of the speech, lowering the victim's dignity in the eyes of others, all the while subjecting her to

12  contempt and/or ridicule."  *Id*. at *5 (citation omitted).  The court found that the defendants'

13  statements were actionable as slander because the falsity of racial epithets "surely [] cannot be an

14  issue in this day and age."  *Id*. at *6 ("As the substance of a racial epithet is never true (i.e., that

15  one's race necessarily dictates her abilities and/or status in society), it seems that racial epithets

16  can always be proven to be false.")

17          Thus, plaintiff Wilson's allegations are sufficient to state a cognizable slander claim.

18                      2.      Whether Plaintiff Wilson's Slander Claim is Time-Barred

19          Defendant Lacy argues that plaintiff Wilson's slander claim is time-barred because the

20  allegedly defamatory statements were published before October 22, 2018 (one year before

21  plaintiff Wilson's complaint was filed), and the statute of limitations for a slander claim is one

22  year.  (Doc. No. 8-1 at 7) (citing Cal. Civ. Proc. Code § 340(c)).  Plaintiff Wilson agrees that the

23  statute of limitations for slander claims is one year, but she asserts that the doctrine of equitable

24  tolling applies here because she had to first exhaust her administrative remedies.  (Doc. No. 14 at

25  22.)  Neither plaintiff Wilson nor defendant Lacy have adequately briefed their arguments

26  _____

    totality of the circumstances, *see Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970
27  (1993), and ask "whether a reasonable fact finder could conclude the published statement declares
    or implies a provably false assertion of fact."  *Reese v. Barton Healthcare Sys.*, 606 F. Supp. 2d
28  1254, 1263 (E.D. Cal. 2008) (citing *Campanelli v. Regents*, 44 Cal. App. 4th 572, 578 (1996)).

1    regarding when the statute of limitations period commenced with respect to plaintiff Wilson's

2    slander claim.

3            The statute of limitations on a slander claim in California is one year.  *See Bowen v. M.*

4    *Caratan, Inc.*, 142 F. Supp. 3d 1007, 1033 (E.D. Cal. 2015).  Generally, the limitations period for

5    a slander claim begins to accrue upon the publication of the defamatory statement, but there are

6    exceptions "where the plaintiff could not have reasonably discovered the facts giving rise to the

7    claim."  *See Cusano v. Klein*, 264 F.3d 936, 949 (9th Cir. 2001); *see also Schneider v. United*

8    *Airlines, Inc*., 208 Cal. App. 3d 71, 77 (1989) (noting "[i]f a party could not reasonably have

9    discovered the facts giving rise to the cause of action for libel, . . ., the statute of limitations starts

10   to run upon discovery of the publication of the defamatory matter.").  Here, although the

11   allegedly defamatory statements were published in December 2016 and June 28, 2018, when

12   defendant Lacy allegedly made those statements to plaintiff Smith, plaintiff Wilson alleges that

13   plaintiff Smith told her about defendant Lacy's statements on July 11, 2018.  (Compl. at ¶ 111.)

14   There are no allegations indicating plaintiff Wilson could have discovered defendant Lacy's

15   statements any sooner.  From the face of the complaint, it appears that the one-year limitations

16   period for plaintiff Wilson's slander claim began to accrue on July 11, 2018, when she

17   "discovered the facts giving rise to [her] claim."  *See Cusano*, 264 F.3d at 949.  Thus, if none of

18   the limitations period is subject to tolling, plaintiff Wilson's slander claim would be time-barred

19   because she filed her complaint more than one year after July 11, 2018.

20           Plaintiff Wilson contends that the limitations period was tolled while she exhausted her

21   administrative remedies, which she contends included the filing of her DFEH complaint, her

22   submission of her government tort claim to the City, and the City's internal investigation of her

23   complaint about defendant Lacy's statements.  (Doc. No. 14 at 22–23.)  Assuming—without

24   deciding—that the limitations period is tolled during the time plaintiff Wilson spent exhausting

25   /////

26   /////

27   /////

28   /////

her administrative remedies under both FEHA[16] (9 days) and the Tort Claims Act[17] (46 days), she would have had to file her complaint by September 4, 2019 for her slander claim to be timely. Because she filed her complaint on October 22, 2019, her slander claim is time-barred unless she can demonstrate that she is entitled to further equitable tolling. Plaintiff Wilson contends that the limitations period should be further tolled for the duration of the City's internal investigation of her complaint about defendant Lacy's statements. (*Id.*) However, plaintiff Wilson's allegations alone do not resolve whether the doctrine of equitable tolling applies for the duration of the City's internal investigation. Determining whether equitable tolling applies "ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. Unites States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (citation omitted).

/////

/////

---

[16] The parties did not adequately brief the issue of whether the time plaintiff Wilson spent exhausting administrative remedies under FEHA (waiting nine days for her right to sue letter from DFEH) is relevant to her cause of action for slander, which is not a FEHA claim. Exhausting administrative remedies under FEHA was not a mandatory prerequisite to plaintiff Wilson filing her civil action against defendant Lacy alleging a slander claim. Moreover, as the court has already concluded, plaintiff Wilson failed to exhaust her administrative remedies under FEHA to maintain her FEHA harassment claim against defendant Lacy. To the extent exhaustion under FEHA tolls the limitations period for a slander claim at all, it is not clear why the limitations period for plaintiff Wilson's slander claim against defendant Lacy should be tolled.

[17] To bring her slander claim against defendant Lacy, who she alleges was acting within the scope of his employment with the City, plaintiff Wilson had to comply with the claims procedure of the California Tort Claims Act by submitting her tort claim to the City. *See* Cal. Gov. Code §§ 905, 950.2; *see also Williams v. Horvath*, 16 Cal. 3d 834, 838 (1976). Plaintiff alleges she complied with this requirement because she described the defamatory incidents and named defendant Lacy as the offender in the claim for damages that she submitted to the City on June 28, 2019, which was rejected by operation of law on August 12, 2019. (Compl. at ¶¶ 175, 177.) Accounting for the time spent exhausting administrative remedies under the California Tort Claims Act as alleged in the complaint, the statute of limitations period would be subject to 46 days of equitable tolling.

Accordingly, the court will deny defendant Lacy's motion to dismiss plaintiff's slander claim because it is not evident from the complaint the extent to which the limitations period for her slander claim would be equitably tolled. Of course, this ruling does not preclude exploration and resolution of this issue on summary judgment.

### H.   Negligent Infliction of Emotional Distress (Fifteenth Cause of Action)

Plaintiffs assert claims for negligent infliction of emotional distress ("NIED") against all defendants. (Compl. at ¶¶ 241–245.) The Individual Defendants, defendant Lacy, and the City move to dismiss plaintiffs' NIED claims arguing that they are barred by the California Workers' Compensation Act and NIED is not an independent tort. (Doc. Nos. 6-2 at 15; 16 at 6–8; 17 at 6.) The Individual Defendants also move to dismiss plaintiff Smith's NIED claim for failure to allege facts pertaining to each of the Individual Defendants, notably failing to identify five of the Individual Defendants in his conclusory allegations. (Doc. No. 6-3 at 15.) In his opposition, plaintiff Smith concedes that he does not allege NIED claims against defendants Clark, Furtado, Watkins, Cuevas, and Estabrooke. (Doc. No. 13-1 at 16.) At the hearing on the pending motions, plaintiffs' counsel clarified that plaintiff Smith is pursuing his NIED claim against defendants the City, Lacy, Burns, and Cardell. Accordingly, the court will dismiss plaintiff Smith's NIED claim against defendants Clark, Furtado, Watkins, Cuevas, and Estabrooke, with prejudice.

To state a claim for NIED, a plaintiff must allege facts showing: (1) duty; (2) breach; (3) severe emotional distress; and (4) actual and proximate cause. *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1524 (1988) ("[NIED] is not an independent tort; it is the tort of negligence, involving the usual duty and causation issues."). "[I]ntentional conduct, including supervisory conduct by an employer, cannot give rise to a negligence cause of action." *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST, 2018 WL 6331009, at *6 (N.D. Cal. Dec. 4, 2018) (citing *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990) (dismissing NIED claim where the actions "were intentional, not negligent"); *McNaboe v. Safeway Inc.*, No. 13-cv-04174-SI, 2016 WL 80553, at *6 (N.D. Cal. Jan. 7, 2016) (dismissing NIED claim without leave to amend because "intentional conduct cannot support a claim of NIED").

/////

38

Though generally, an employee who sustains an injury "arising out of and in the course of the employment" is limited to recovery provided under the California's Workers' Compensation Act, including for emotional distress claims, there are exceptions where fundamental public policy is involved. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 753 (1992). The California Supreme Court has clarified that emotional distress caused by racial discrimination is not subject to the exclusivity provisions of the workers' compensation laws. *See Fermino v. Fedco, Inc*., 7 Cal. 4th 701, 715 (1994) (citing *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1101 (1992), *overruled on other grounds in Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 80, fn. 6 (1998) (emphasizing the "'compensation bargain' cannot encompass conduct, such as sexual or racial discrimination, 'obnoxious to the interests of the state and contrary to public policy and sound morality'").

Here, the court finds that plaintiffs' allegations of NIED fail to state a claim and fail to comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs re-incorporate over 230 paragraphs spanning over 100 pages of their complaint into this claim, but they do not clearly and succinctly state the facts that pertain to the elements of their NIED claims for each defendant. Moreover, the allegations of breach in the negligence section of their complaint state "as more specifically alleged above", without reference to specific paragraphs and without identifying any allegedly *negligent* conduct on the part of each defendant, and how that particular defendant's conduct caused the alleged emotional distress. As a result of these pleading deficiencies, the court is also unable to determine whether the underlying conduct "contravenes fundamental public policy" such that the exclusivity provisions of the workers' compensation laws would not bar plaintiffs' NIED claims. *See Dayton v. Modesto Irrigation Dist.*, No. 1:06-cv-1076-LJO, 2007 WL 4107904, at *12 (E.D. Cal. Nov. 16, 2007) ("[E]motional distress claims that are based on an employer's conduct that contravenes fundamental public policy or exceeds the risks inherent in the employment relationship are not subject to Workers' Compensation law preemption."); *see also Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 903 (2008) ("Claims based on distress caused by alleged whistleblower retaliation do not fall within either exception and are 'barred by the workers' compensation exclusive remedy provisions.'") (citation omitted).

39

1    Because plaintiffs' allegations fail to state a claim for NIED against the city employee

2    defendants, their NIED claims against the City necessarily fail as well.  *See* Cal. Gov. Code

3    § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an

4    employee of the public entity within the scope of his employment.").

5         Accordingly, the court will dismiss plaintiff Wilson's NIED claims against all defendants

6    and plaintiff Smith's NIED claims against the City and defendants Lacy, Burns, and Cardell for

7    failure to comply with Rule 8 and failure to state a claim but with leave to amend.

8         **I.     Intentional Infliction of Emotional Distress (Sixteenth Cause of Action)**

9         Plaintiffs assert claims against all defendants for intentional infliction of emotional

10   distress ("IIED").  (Compl. at ¶¶ 246–250.)  The Individual Defendants, defendant Lacy, and the

11   City move to dismiss plaintiffs' IIED claims for failure to state a claim and because they are

12   barred by the exclusivity provisions of the Workers' Compensation Act.   (Doc. Nos. 8-1 at 10; 6-

13   2 at 17; 6-3 at 15.)  In opposing the Individual Defendants' motion to dismiss, plaintiff Smith

14   clarified that he included defendants Clark, Furtado, Watkins, Cuevas, and Estabrooke in this

15   claim due to an oversight, and he does not intend to maintain his IIED claims against them.

16   (Doc. No. 13-1 at 16.)  At the hearing on the motions, plaintiffs' counsel clarified that plaintiff

17   Smith is pursuing his IIED claim against the defendant City and defendants Lacy, Burns, and

18   Cardell.  Accordingly, the court will dismiss plaintiff Smith's IIED claim against defendants

19   Clark, Furtado, Watkins, Cuevas, and Estabrooke, with prejudice.

20        To state an IIED claim, a plaintiff must allege facts showing:  "(1) extreme and

21   outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

22   probability of causing, emotional distress; (2) the [plaintiff's] suffering severe or extreme

23   emotional distress; and (3) actual and proximate causation of the emotional distress by the

24   defendant's outrageous conduct."  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1983)

25   (citations omitted).  "Behavior may be considered outrageous if a defendant (1) abuses a relation

26   or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is

27   susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the

28   /////

1  recognition that the acts are likely to result in illness through mental distress." *Molko v. Holy*

2  *Spirit Ass'n*, 46 Cal. 3d 1092, 1122 (1988).

3  Claims for IIED that are based on actions that are a normal part of the employment

4  relationship, "such as demotions, promotions, criticism of work practices, and frictions in

5  negotiations as to grievances," are preempted by the workers' compensation laws. *Cole v. Fair*

6  *Oaks Fire Prot. Dist*., 43 Cal. 3d 148, 160 (1987).  However, IIED claims that are based on

7  discriminatory conduct that violates public policy are not preempted because that conduct "cannot

8  be considered a normal part of the employment relationship."  *See Smith v. Int'l Brotherhood of*

9  *Elec. Workers*, 109 Cal. App. 4th 1637, 1658 (2003); *see, e.g*., *Light v. Cal. Dep't of Parks &*

10  *Recreation*, 14 Cal. App. 5th 75, 101 (2017) (confirming long-standing view that IIED claims

11  based on unlawful discrimination and retaliation in violation of FEHA are not subject to workers'

12  compensation exclusivity provisions).

13  Here, the court finds that plaintiffs' allegations of IIED fail to state a claim and fail to

14  comply with Rule 8, which requires "a short and plain statement of the claim showing that the

15  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiffs re-incorporate over 230

16  paragraphs spanning over 100 pages of their complaint into this claim, but they do not clearly and

17  succinctly state the facts that pertain to the elements of their IIED claims, notably what extreme

18  and outrageous conduct each defendant is alleged to have engaged in and how this conduct

19  caused distress that was severe or extreme to the plaintiffs.  Moreover, plaintiffs' allegations do

20  not clearly show that the alleged emotional distress was caused by racial discrimination, or by

21  other conduct that contravenes fundamental public policy, as opposed to conduct that is

22  considered a normal part of the employment relationship.  Thus, the allegations are not sufficient

23  to enable the court to determine whether plaintiffs' IIED claims are exempt from preemption

24  under the workers' compensation laws.

25  Accordingly, the court will dismiss plaintiff Wilson's IIED claims against all defendants

26  and plaintiff Smith's IIED claims against the City and defendants Lacy, Burns, and Cardell for

27  failure to comply with Rule 8 and failure to state a claim, with leave to amend.

28  /////

1

**CONCLUSION**

2      For the foregoing reasons, defendants' motions to dismiss (Doc. Nos. 6, 8) are granted in

3   part and denied in part as follows:

4      1.      Plaintiffs' fourteenth cause of action against all defendants for negligence is

5              dismissed with prejudice;

6      2.      Plaintiff Wilson's second cause of action against the Individual Defendants and

7              defendant Lacy for harassment under FEHA is dismissed due to her failure to

8              exhaust her administrative remedies;

9      3.      Plaintiff Smith's second cause of action against defendant Lacy for harassment

10             under FEHA is dismissed due to his failure to exhaust his administrative remedies;

11     4.      Defendant Lacy's motion to dismiss plaintiff Wilson's eighth cause of action for

12             racial discrimination in violation of 42 U.S.C. §1983 is denied;

13     5.      Plaintiff Wilson's eighth cause of action for racial discrimination in violation of 42

14             U.S.C. § 1983 against the City and the Individual Defendants is dismissed, with

15             leave to amend, for failure to state a claim;

16     6.      Plaintiff Wilson's ninth cause of action for racial discrimination in violation of 42

17             U.S.C. § 1981 against all defendants is dismissed, with leave to amend, for failure

18             to state a claim;

19     7.      Plaintiff Wilson's tenth cause of action for harassment (hostile work environment)

20             in violation of 42 U.S.C. § 1981 against all defendants is dismissed, with leave to

21             amend, for failure to state a claim;

22     8.      Plaintiff Wilson's eleventh cause of action for retaliation in violation of 42 U.S.C.

23             § 1981 against all defendants is dismissed, with leave to amend, for failure to state

24             a claim;

25     9.      Plaintiff Wilson's twelfth cause of action for retaliation under California Labor

26             Code § 1102.5 against defendant Lacy and the Individual Defendants is dismissed,

27             with prejudice, for failure to state a claim;

28   /////

10.    Plaintiff Smith's twelfth cause of action for retaliation under California Labor Code § 1102.5 against defendant Lacy and defendant Burns is dismissed, with prejudice, for failure to state a claim;

11.    Defendant Lacy's motion to dismiss plaintiff Wilson's thirteenth cause of action for slander is denied;

12.    Plaintiff Wilson's fifteenth cause of action for negligent infliction of emotional distress against all defendants is dismissed, with leave to amend, for failure to state a claim;

13.    Plaintiff Smith's fifteenth cause of action for negligent infliction of emotional distress against defendants Clark, Furtado, Watkins, Cuevas, and Estabrooke is dismissed with prejudice;

14.    Plaintiff Smith's fifteenth cause of action for negligent infliction of emotional distress against the City and defendants Lacy, Burns, and Cardell is dismissed, with leave to amend, for failure to state a claim;

15.    Plaintiff Wilson's sixteenth cause of action for intentional infliction of emotional distress against all defendants is dismissed, with leave to amend, for failure to state a claim;

16.    Plaintiff Smith's sixteenth cause of action for intentional infliction of emotional distress against defendants Clark, Furtado, Watkins, Cuevas, and Estabrooke is dismissed with prejudice;

17.    Plaintiff Smith's sixteenth cause of action for intentional infliction of emotional distress against the City and defendants Lacy, Burns, and Cardell is dismissed, with leave to amend, for failure to state a claim; and

/////

/////

/////

/////

/////

18.  If plaintiffs wish to amend their complaint in an attempt to cure any of the deficiencies identified in this order with respect to causes of action that have been dismissed with leave to amend, plaintiffs are directed to file with the court an amended complaint no later than twenty-eight days from the date of service of this order.[18]

IT IS SO ORDERED.

Dated:  __**September 4, 2020**__                  _____

UNITED STATES DISTRICT JUDGE

---

[18] If plaintiffs elect to file an amended complaint, they are reminded that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiffs file an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in any amended complaint, as in an original complaint, each claim must be sufficiently alleged.

44